**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

|  |  |
|---|---|
| ARIGNA TECHNOLOGY LIMITED., | |
| Plaintiff, | |
| v. | Civil Action No. 2:21-CV-174 |
| GENERAL MOTORS LLC et al., | JURY DEMANDED |
| Defendants. | |

## NISSAN'S OPPOSITION TO ARIGNA'S SECOND MOTION FOR LEAVE TO SUPPLEMENT ITS RULE 26 EXPERT DISCLOSURES

███████████████████████████████████████████████

## **TABLE OF CONTENTS**

I.     ARIGNA OMITS CRITICAL FACTS .................................................................... 2

    **A.**   While Arigna's Agreement Is with Visteon, Only ███████ Were
            Accused of Infringement ............................................................... 2

    **B.**   The Visteon Agreement ███████████████████████ ................... 3

    **C.**   Arigna's Supplemental Expert Reports ███████████████
            ███████ ............................................................................ 5

    **D.**   Arigna Misrepresents Nissan's Positions During the May 26 Meet &
            Confer ....................................................................................... 6

II.    ARIGNA'S MOTION SHOULD BE DENIED ................................................... 7

    **A.**   The Prejudice to Nissan From Arigna's Supplementation is Extreme ................. 7

        **1.**   Without Further Fact Discovery, ███████████████
               ███████████ ............................................................. 7

        **2.**   The Visteon Agreement ███████████████████
               ███████████████ ..................................................... 9

        **3.**   The Timing of the Visteon Agreement Prevented Nissan from
               Pursuing this Discovery ............................................................. 10

    **B.**   ████████████████████████████████ It Is
            of Little Legal Importance ........................................................... 11

    **C.**   A Continuance Is Necessary To Attempt To Cure Nissan's Prejudice ............... 14

    **D.**   Arigna's Explanation Ignores Its Misuse Of The Agreement ............................ 15

III.   CONCLUSION ............................................................................................ 15

## TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Fenner Investments Ltd. v. Hewlett-Packard Co.*,
   No. 6:08-cv-273, 2010 U.S. Dist. LEXIS 41514 (E.D. Tex. Apr. 28, 2010)...............11, 12, 13

*LaserDynamics, Inc. v. Quanta Computer, Inc.*,
   694 F.3d 51 (Fed. Cir. 2012).............................................................................................11, 12

*Pioneer Corp. v. Samsung SDI Corp.*,
   No. 2:6-cv-384, 2008 U.S. Dist. LEXIS 107079 (E.D. Tex. Oct. 2, 2008) ............................12

*ReedHycalog, UK, Ltd. v. Diamond Innovations Inc.*,
   727 F. Supp. 2d 543 (E.D. Tex. 2010) ...................................................................................12

*Rude v. Westcott*,
   130 U.S 152 ............................................................................................................................11

██████████████████████████████████████████████

Defendants Nissan Motor Co., Ltd. and Nissan North America, Inc. ("Nissan") oppose Arigna's second motion for leave to supplement its Rule 26 expert disclosures, this time to include analysis directed to Arigna's ████████████████ agreement with non-party ███████ Visteon Corporation ("Visteon") (Mot. Ex. 1, the "Visteon Agreement"). The Court's longstanding principle that ████████████████████████████████████████████████ strongly counsels against permitting supplementation in this case. Arigna's business is ████████ ███████████████ and the terms of its ███████████████████████████████ ████████████████████████████████████ are simply not important enough, and too prejudicial, to warrant supplementation at this late stage.

Arigna's attempted use of the Visteon Agreement is particularly prejudicial here. Mr. Yurkerwich assumes—with no basis—that the Visteon Agreement ████████████████████████ ████████████████████████████████████████████████████ Mr. Yurkerwich rests this assumption on the agreement's ████████████ ████████████████████████████████████████████████████. Using the ████████████ ████████████████████████████████████, Mr. Yurkerwich derives ████████████████ ████████████████████████████████████████████████████ ██████████████████████████

However, the Visteon Agreement is ████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████████:

- ████████████████████████
- ████████████████████████████████████████████████████████ ████████████████████████████

██████████████████████████████████

• ███████████████████████████████████████████
  ██████████████████████████

Accordingly, because the █████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████ is unreliable and highly prejudicial to Nissan.

If the Court nonetheless permits supplementation, Nissan respectfully requests the opportunity to pursue discovery from Arigna, Visteon, and NXP relating to critical information underlying the Visteon Agreement and a continuance of trial to accommodate the same. █ ████████████████████████████████████████████, to be a reliable indicator of the purported invention's value, ██████████████████████████████

████████████████████████████████████████████████████

█████████████████████ Neither party has this information and it is highly relevant. The facts regarding the circumstances surrounding the agreement are also very important. Thus, if the motion is granted, Nissan respectfully requests the court's order: (1) permit discovery (documentary and depositions) directed to Arigna, Visteon, and NXP; (2) enter a schedule for: (i) supplemental rebuttal expert reports; (ii) supplemental depositions of all experts, and (iii) supplemental *Daubert* deadlines; and (3) continue trial in order to accommodate the foregoing.

I.     **ARIGNA OMITS CRITICAL FACTS**

   A.     **While Arigna's Agreement Is with Visteon,** ██████████████████
   ████████████████████

As indicated in the agreement, ███████████████████████████████████████

████████████████████ allegedly containing the NXP MC33926 chip accused of infringement in this lawsuit. ███████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████ *Id.*, §1.

███████████████████████████████████████████

Despite the foregoing, ███████████████, the Visteon Agreement recites that ███

████████████████████████████████████████████████████████

██████████████████████████ *Id.*, §C. ████████████████████

███████████████████████████████ Ex. 1 (5/12/22 email from M. Ducca with

attachment). ██████████████████████████████████████████

████████████████████ Ex. 2 (5/16/22 Arigna draft). *See also* Ex. 3 (5/13/22 email from

M. Berry with attachment); Ex. 4 (5/16/22 email from M. Ducca with attachment). █████████

████████████████████████████████████████████████████████

██████████████████████████████ Mot. Ex. 1, §C. █████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████ Ex. 5 ████████████████.

**B.      The Visteon Agreement** ████████████████████████████

Visteon ████████████████████████████████████████████████

██████████████████████████████████████████████:

- ████████████████████████████████████████████████

  ██████████████████████████████████████████████.

- ████████████████████████████████████████████████

  ████████████████████████████████████████.

- ████████████████████████████████████████████████

  ██████████████████████████████████████.

And, in each provision, ███████████████ is defined to mean:

-3-

██████████████████████████████

██  ██  ██  ██  ██  ██  ██  ██  ██
████████████████████████████████
███████████████████████████

*Id.*, §4.

The Visteon Agreement ██████████████████. In each of the ██████
██████████████████████████████████████████
██████████████████████████████████████████
████████████████████████████ Mot. Ex.1, §8. The
██████████████ are defined as:

████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
████████████████████████████
███████

*Id.*, §7. Accordingly, the Visteon Agreement ████████████████████████████
████████████████████████████

In fact, public information suggests that it is highly likely that Visteon ████████████
████████████████████████████████████████████████
████████████████████. With respect to Visteon, it describes its

business as "a global automotive technology company," offering "scalable hardware and software

solutions that enable the digital, electric, and autonomous evolution of our global automotive

customers, including Ford, BMW, Mazda, Volkswagen, Renault, Nissan, Daimler, GM, Stellantis,

and Jaguar/Land Rover." Ex. 6 at 3 (2021 Visteon 10-K). These solutions include numerous other

devices. *Id.* Many of these solutions likely contain driver circuits covered by the Visteon

Agreement. Visteon's 2020 10K identifies its largest customer as Ford (22% of net sales in 2020),

████████████████████████████████████████

Mazda (11%), Renault/Nissan (11%), and BMW (11%). Ex. 7 at 6 (2020 Visteon 10-K). In

addition, a ███████████████ indicates ████████████████████████████████

████████████████████████████████████████ Ex. 5 at 2-6. ████████████

████████████████████████████████████

With respect to NXP, it describes itself as a "global semiconductor company" engaged with

"global original equipment manufacturers (OEM) and sell products in all major geographic

regions." Ex. 8 at 3 (2021 NXP 10-K). NXP sells semiconductor chips for many applications, and

includes Visteon as one of its 10 largest OEM end customers. *Id.*

Moreover, the Visteon Agreement ████████████████████████████████

████████████████████████████████. *See* Mot. Ex. 1, §9.

### C.     Arigna's Supplemental Expert Reports ████████████████████
████████████████████████████████

On May 25, 2022, Arigna served a third supplemental expert report of Mr. Yurkerwich and

a fourth supplemental expert report of Dr. Shaver. Both experts purport to offer new opinions in

view of the Visteon Agreement. For example, ████████████████████████

████████████████████████████████████████

████████████████████████████ Mot. at 3. Mr. Yurkerwich purports to ████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

*Id.* Mr. Yurkerwich ████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████ Mot. Ex. 2, ¶11. Mr. Yurkerwich does not identify any attempt,

██████████████████████████████████████████

whatsoever, to ascertain whether or not his assumption is, in fact, true. *See id.*

### D. Arigna Misrepresents Nissan's Positions During the May 26 Meet & Confer

Arigna grossly misrepresents Nissan's positions during the meet and confer on Arigna's motion. Arigna states that Nissan (1) confirmed that it would not serve expert disclosures relating to the Visteon ████; (2) would not accept Arigna's offer to depose Mr. Yurkerwich and Dr. Shaver relating to the supplements at issue; (3) refused Arigna's offer to produce all negotiation-related documents; and (4) characterized its prejudice as relating to the accuracy of ███████ ████████████████████████ Mot. at 3-4, 7-8. <u>None of this is true</u>. And Arigna wanted Nissan to agree to forego all other discovery.

During the meet and confer, Arigna stated it desired to supplement its expert reports to address the Visteon Agreement and doubted whether anything could moot the motion, but asked Nissan if that was indeed true. Nissan responded that given the prejudice to Nissan from Arigna's and Mr. Yurkerwich's misuse of Visteon Agreement (████████████████████████ ████), it would oppose the motion in any case. However, in an effort to ascertain the scope of disagreement, if any, on necessary discovery should the Court grant Arigna's motion, Nissan inquired as to Arigna's position on each of the following areas of discovery: (1) all negotiations between Arigna/Visteon ████ relating to the Visteon Agreement and drafts of the Visteon Agreement; (2) a deposition of Arigna regarding the Visteon Agreement; (3) document and deposition subpoenas to Visteon, ████ and NXP; (4) supplemental expert reports of Nissan's experts and depositions of all supplementing experts; and (5) a schedule for *Daubert* motions relating to supplemental opinions directed to the Visteon Agreement.

On each of these areas of discovery, Arigna indicated that it would "need to get back to you." Accordingly, contrary to Arigna's representations, (1) Nissan did not confirm it would not serve supplemental disclosures, it expressly indicated the opposite; (2) Nissan did not decline

███████████████████████████████████████████████

Arigna's offer to depose Mr. Yurkerwich and Dr. Shaver, it expressly indicated the opposite; and (3) Nissan did not refuse Arigna's offer to produce all negotiation documents and drafts, it expressly indicated it would demand them. This discovery, however, is only necessary—along with the other discovery outlined herein—if the Court grants Arigna's motion to supplement.

During the meet and confer, and also related to its effort to ascertain the scope of disagreement, if any, on necessary discovery in the event the Court grants the motion, Nissan asked Arigna's counsel whether it could represent that ████████████████████████████████ ███████████████████████████████████████████████" Counsel for Nissan clarified multiple times that it was inquiring about ███████████████████ ████████████████████ Arigna's counsel simply responded that "you have all of the information we have," and refused to confirm or deny that the ██████████████████████ ███████████████████████████████████████████ Accordingly, Nissan never characterized its prejudice as simply relating to ████████████████████ ██████████████████████████████████

## II.   ARIGNA'S MOTION SHOULD BE DENIED

### A.   The Prejudice to Nissan From Arigna's Supplementation is Extreme

#### 1.   Without Further Fact Discovery, ██████████████████████ ████████████████████████

Arigna argues that during the parties' meet and confer, Nissan raised the pretextual request of seeking ███████████████████████████████████████████ ████████████ Mot. at 8. This argument is deliberately misleading. As Nissan explained during the meet and confer, Nissan's principle concern was not the accuracy of the information that ████ produced during discovery, but rather that the Visteon Agreement ██████████████████████ ██████████████████████████████████████████████.

███████████████████████████████████

As explained above, ████████████████████████████████████████

████████████████████████████████████████—of infringing the '850

patent. The Visteon Agreement ████████████████████████████████

███████████████████████████████████████████████

████. However, the Visteon Agreement ███████████████████████

████████████████ Mr. Yurkerwich then ████████████████████████

██████████████████████████ Accordingly, if the Visteon Agreement ████████

███████████████████████████████████████████████

██████ Indeed, several reasons indicate that discovery would show that this is the case.

Mr. Yurkerwich concludes that ██████████████████████████████

███████████████████████████████████████████████[1]

and accordingly ██████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████

First, the Visteon Agreement ██████████████████████████████

████ Rather, the Visteon Agreement ████████████████████████

██████████████████████████ *See* Mot. Ex. 3, §§8-10. ████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

---

[1] Indeed, ████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

███████████████████████████████████████████████████████

████████████████████████ Second, █████████████████████ *Id.*, §9.

The Visteon Agreement █████████████████████████████████

████████████████ Indeed, ███████████████████████████████

████████████████████████ *Id.*, §3. Again, ████████████████

███████████████████████████████████████████████████████

████████████ *See* Ex. 5 at 7 ███████████████████████████

████████████████. Third, the Visteon Agreement ██████████████

███████████████████████████████████████████████████████

████████ *Id.*, §9. Fourth, the Visteon Agreement █████████████

Finally, during the parties' meet and confer, Arigna's counsel could not rebut any of these points. In fact, counsel for Nissan asked Arigna's counsel whether it could represent that the Visteon Agreement ████████████████████████████████████████. Arigna's counsel could not do so and instead offered the vague, unhelpful response that Nissan has the same information as Arigna.

2.    **The Visteon Agreement** ████████████████████████
████████████████████████████████████

If the Visteon Agreement was ████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████

Further, ███████████████████████████████████████████████

██████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

██████████████ Indeed, ███████████████████████

████████████████████████████████████████████

████████ In other words, ██████████████████████

████████████████████████████████████████████

███████████████████████████

**3.    The Timing of the Visteon Agreement Prevented Nissan from Pursuing this Discovery**

Because Arigna settled with non-party Visteon after fact and expert discovery closed, Nissan never had an opportunity to pursue discovery from Visteon directed to ████████

████████████████████████████████████████████

That information is critically important to Nissan's ███████████████████████

████████ and to Nissan cross examining Mr. Yurkerwich on his assumption ███████████

████████████████████████ As one rudimentary example, ███████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████ .

And the information sought only resides in certain third party entities, and not in the public domain. If Nissan could have taken this discovery, it would have almost certainly shown that Mr. Yukerwich's ████████████████████████████ That is the prejudice.

████████████████████████████████████████████

████████████████████████████ Visteon is "a global

-10-

███████████████████████████████

automotive technology company," offering "scalable hardware and software solutions that enable the digital, electric, and autonomous evolution of our global automotive customers, including Ford, BMW, Mazda, Volkswagen, Renault, Nissan, Daimler, GM, Stellantis, and Jaguar/Land Rover." Ex. 6 (2021 Visteon 10-K). These solutions include many devices that likely contain driver circuits subject to the release and license provisions of the Visteon Agreement. *Id.* Visteon's largest customers are Ford (22% of net sales in 2020), Mazda (11%), Renault/Nissan (11%), and BMW (11%). Ex. 7 (2020 10-K). In addition, Visteon supplied engine control units as well as other types of electronic control units to many automakers ███████████. *See* Ex. 5.  Likewise, NXP describes itself as a "global semiconductor company" engaged with "global original equipment manufacturers (OEM) and sell products in all major geographic regions." Ex. 8 at 3 (2021 NXP 10-K). NXP sells semiconductor chips for many applications and includes Visteon as one of its 10 largest OEM end customers. *Id.* The limited public sources suggest it is a near certainty that ██

████████████████████████████████████████.

**B.**     ████████████████████████████**, It Is of Little Legal Importance**

Nissan does not consider Dr. Shaver's and Mr. Yurkewich's supplemental opinions to be important as they are directed to ██████████████████ entered into just before trial between Arigna, an entity whose sole business is ████████████, and a non-party Tier I supplier, ██████████████████. However, the discovery implicated by the proposed supplemental is critical.

It is well-established that litigation-induced settlement agreements are of minimal relevance. *See Fenner Investments Ltd. v. Hewlett-Packard Co.*, No. 6:08-cv-273, 2010 U.S. Dist. LEXIS 41514, at *4 (E.D. Tex. Apr. 28, 2010) ("Settlement agreements are generally not relevant because in the usual course they do not provide an accurate reflection of what a willing licensor

would do in an arm's length transaction."); *see also Rude v. Westcott*, 130 U.S 152, 164 ("[A]
payment of any sum in settlement of a claim for an alleged infringement cannot be taken as a
standard to measure the value of the improvements patented, in determining the damages sustained
by the owners of the patent in other cases of infringement."). Indeed, the Federal Circuit has
instructed that settlement agreements are accordingly permitted only "under certain limited
circumstances." *LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 77 (Fed. Cir. 2012)
("The propriety of using prior settlement agreements to prove the amount of a reasonable royalty
is questionable."); *see also Pioneer Corp. v. Samsung SDI Corp.*, No. 2:6-cv-384, 2008 U.S. Dist.
LEXIS 107079, at *17 (E.D. Tex. Oct. 2, 2008) (licenses that "arise[] under the threat of litigation
[have] *little* relevance . . . .").

Accordingly, "the Court assesses litigation licenses on a case-by-case basis in determining
their admissibility." *ReedHycalog, UK, Ltd. v. Diamond Innovations Inc.*, 727 F. Supp. 2d 543,
547 (E.D. Tex. 2010). The Court considers whether the probative value of the settlement
agreements in the context of the hypothetical negotiation and the economic demand for the
patented technology is substantially outweighed by the danger of unfair prejudice, confusing the
issues, or misleading the jury. *LaserDynamics*, 694 F.3d, at 77-78 ("The notion that license fees
that are tainted by the coercive environment of patent litigation are unsuitable to prove a reasonable
royalty is a logical extension of *Georgia-Pacific*, the premise of which assumes a voluntary
agreement will be reached between a willing licensor and a willing licensee, with validity and
infringement of the patent not being disputed."); *Fenner*, 2010 U.S. Dist. LEXIS 41514, at *6-7
("District courts routinely exclude settlement licenses because the potential prejudice and jury
confusion substantially outweigh whatever probative value they may have.").

As discussed above in connection with Nissan's prejudice, it is critical that Nissan be given

███████████████████████████████████████████

the opportunity to take discovery in order for its experts to accurately interpret the Visteon

Agreement and to have a proper factual foundation to cross-examine Mr. Yurkerwich's assumption

that ██████████████████████████████████████████████████

████ This discovery and factually-supported cross examination is critical to the fact finder's ability

to ensure that damages in this case are limited to the value of the patent and not inflated through

Arigna's ███████████████████████████████████████████

███████████████████████████████████████ The law and

fundamental fairness require it. *See Fenner*, 2010 U.S. Dist. LEXIS 41514, at *4.

This includes at least discovery directed to the following: (1) a deposition of Arigna

relating to the agreement; and (2) document and deposition subpoenas to Visteon and NXP. The

information sought by category (1) from Arigna will provide context for the negotiation and

drafting of the agreement, including Visteon's position as to ████████████████████

██████████████ The information sought by category (2) from non-parties Visteon and NXP will

likewise ensure that ███████████████████████████████, as well

as the basis for Visteon to enter into the agreement. For example, ████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████.

Lastly, expert discovery in the form of supplemental opinions from Nissan's experts is

critical in order for Nissan to be given the opportunity—after obtaining the above evidence—to

supplement its expert reports to address ██████████████████████ and respond to

Dr. Yurkerwich's ██████████████████████████, and to cross examine Mr.

---

[2] Arigna's complaint asserts that the MC33931 infringes the '850 patent. ECF No. 1.

████████████████████████████████████████

Yurkerwich on his unsupported assumption that ██████████████████████████

████████████████████████ Thereafter, the parties should be allowed to file supplemental *Daubert*

motions on the supplemental opinions offered in connection with the agreement.

### C.  A Continuance Is Necessary To Attempt To Cure Nissan's Prejudice

The foregoing necessary discovery cannot be accomplished with the current trial date of

July 11.  Denying Arigna's motion cures Nissan's prejudice, but if the Court grants the motion, a

continuance of trial to permit the above discovery is critically important to cure the prejudice to

Nissan. Arigna argues that a continuance is not necessary because the needed depositions are a

problem of Nissan's own making and Nissan has all of the information underlying the Visteon

Agreement. Mot. at 9-10. These spurious arguments fail. The needed deposition discovery is

driven entirely by the timing of Arigna's settlement with Visteon, the fact that Visteon was not a

party to the lawsuit ████████████████████████████████████ and

due to Mr. Yurkerwich's ████████████████████████████████████

████████████████████████████████

Arigna's suggestion that Nissan has all of the information underlying the Visteon

Agreement is patently false. Arigna's counsel could not confirm or deny that ███████████████

████████████████████████████████. Neither party has the

necessary information sufficient to accurately interpret the Visteon Agreement. Arigna's experts

should not be permitted to put on blinders ████████████████████, and use those

blinders to present █████████████████████.[3]

_____

[3] █████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████

-14-

████████████████████████████████████

To that end, Nissan respectfully requests a continuance of trial. As set forth above, it is critical that Nissan be given the opportunity to take discovery in order for its own experts to properly understand the scope of the Visteon Agreement and to cross examine Mr. Yurkerwich's assumption that ██████████████████████████████████████. Trial is five weeks away and it is not possible to accomplish the necessary discovery, especially requiring non-party discovery, and updating reports and other associated activities in that short period of time. A continuance will ensure that Nissan's trial preparation is not prejudiced, and that Nissan is given the opportunity to take critical discovery that will ensure that the jury is provided sufficient information to accurately ascertain the true value of the purported invention.

### D.   Arigna's Explanation Ignores Its Misuse Of The Agreement

Nissan does not dispute that Arigna's experts could not have included analysis of the May 20 Visteon Agreement in their prior reports. However, Arigna's explanation ignores its expert's unsupported recasting of the agreement and accordingly does not excuse the severe prejudice to Nissan, the lack of importance of the supplementation due to the ███████████████ between Arigna and a non-party supplier ██████████████████████ ███████████████. At the very least, there is need for a continuance to attempt to cure.

## III.   CONCLUSION

For the reasons stated, Nissan respectfully requests that the Court deny Arigna's motion. But if the Court grants the motion, Nissan respectfully requests that the Court: (1) reopen discovery to permit written and deposition discovery directed to Arigna, Visteon, and NXP; (2) enter a schedule for: (i) supplemental rebuttal expert reports; (ii) supplemental depositions of all experts, and (iii) supplemental *Daubert* deadlines; and (3) continue trial to accommodate the foregoing.

Dated: June 3, 2022                          Respectfully submitted,


                                             */s/Pavan K. Agarwal*
                                             Pavan K. Agarwal
                                             Bradley Roush
                                             Foley & Lardner LLP
                                             Washington Harbour
                                             3000 K Street, N.W., Suite 600
                                             Washington, D.C. 20007-5109
                                             Telephone: (202) 672-5300
                                             Facsimile: (202) 672-2399
                                             pagarwal@foley.com

                                             William J. Robinson
                                             Ashley M. Koley
                                             Foley & Lardner LLP
                                             555 S. Flower St. Suite 3300
                                             Los Angeles, California 90071
                                             Telephone: (213)
                                             Facsimile:
                                             wrobinson@foley.com
                                             akoley@foley.com

                                             Ruben J. Rodrigues
                                             Foley & Lardner LLP
                                             111 Huntington Avenue, Suite 2500
                                             Boston, Massachusetts 02199
                                             Telephone: (617) 342-4000
                                             Facsimile: (617) 342-4001
                                             rrodrigues@foley.com

                                             R. Spencer Montei
                                             Thomas James
                                             Peter E. Loy
                                             Foley & Lardner LLP
                                             321 North Clark Street, Suite 3000
                                             Chicago, Illinois 60654-4762
                                             Telephone: (312) 832-4500
                                             Facsimile: (312) 832-4700
                                             rmontei@foley.com
                                             tajames@foley.com
                                             ploy@foley.com

                                             Patrick A. Lujin
                                             Shook Hardy & Bacon

**FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER**

2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: (816) 474-6550
Facsimile: (816) 421-5547
plujin@shb.com

Melissa R. Smith
State Bar No.: 24001351
Gillam & Smith, LLP
303 South Washington Avenue
Marshall, Texas 75670
Telephone:  (903) 934-8450
Facsimile:  (903) 934-9257
melissa@gillamsmithlaw.com

*Attorneys for Defendants Nissan Motor Co.,
Ltd., and Nissan North America, Inc.*

███████████████████████████

### <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically on June 3, 2022, in compliance with Local Rule CV-5(a).  As such, this document was served on all counsel who have consented to electronic service.

_/s/ Melissa R. Smith_____
Melissa R. Smith

███████████████████████████

████████████████████████████████████

████████████████████

███████████████ —
███████████████